UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTONIAL MARQUETTE MONROE,

    Plaintiff,

v.

BRYAN BELCHER,

    Defendant.

CASE NO. 3:16-cv-05748-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: JUNE 2, 2017

Presently before the Court is defendant Belcher's motion for summary judgment. Dkt. 19.

In his complaint, plaintiff alleges that defendant discriminated against him when defendant sent a letter to the Department of Health regarding the validity of plaintiff's marriage. Plaintiff has not filed a response to defendant's motion for summary judgment, even though defendant sent him a *Rand* notice, advising him that failure to respond could result in dismissal of his case. While his failure to respond does not entitle the moving party to summary judgment by default, this Court may rely on the summary judgment motion, its supporting materials, and any facts contained therein as undisputed for purposes of ruling on the motion for summary judgment. Based on the evidence and arguments presented, defendant's motion should be

granted as to plaintiff's equal protection claim because plaintiff has failed to meet his burden of proof to show that defendant acted with any discriminatory intent.

**BACKGROUND**

On January 6, 2017, the Court granted defendants' Department of Corrections (DOC) and Department of Health (DOH) motion to dismiss, and only the claims against defendant Bechler remain. Dkts. 16, 17. Defendant Belcher now moves for summary judgment and requests that the Court dismiss plaintiff's claims with prejudice. Dkt. 19.

As an initial matter, the Court notes that defendant sent plaintiff a *Rand* Notice on March 20, 2017. Dkt. 23. Defendant sent this notice electronically to plaintiff. *See id.* This Rand Notice informed plaintiff that defendant had filed a motion for summary judgment by which he sought to have plaintiff's case dismissed, and that if plaintiff failed to submit his own evidence in opposition, summary judgment may be entered against him. *See id.*

Plaintiff did not file a response to defendant's motion for summary judgment and did not file any declarations or exhibits refuting defendant's presentation of the relevant events. *See* Dkt. Therefore, plaintiff has failed to refute any of the facts provided by defendant. However, because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Plaintiff filed a verified complaint. Dkt. 4. A verified complaint, like plaintiff's, "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083,

1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). But allegations that are based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

**FACTS**

Defendant provides the following facts, which plaintiff has not disputed. Plaintiff Antonial Monroe is an inmate currently in the custody of DOC at the Stafford Creek Corrections Center ("SCCC"). *See* Dkt. Plaintiff has been in DOC custody since 2013. Dkt. 20. In August 2014, Brandalynn White was approved to visit plaintiff at the Monroe Correctional Complex ("MCC"). Dkt. 21, Declaration of Dianna Rule (Rule Declaration), Exhibit 1, Letter from White. In January 2015, White was denied visitation because she was on electronic home monitoring, and she was told that she could not visit plaintiff until six months after the home monitoring bracelet was removed. *Id.*; Rule Declaration, Exhibit 2, Letter from Stephen Sinclair dated 2/27/15. In April 2015, White reapplied for visitation but was denied because she had an open criminal case. *Id.* Rule Declaration, Exhibits 1 & 3.

From August 25, 2015, to September 8, 2015, plaintiff was housed at Skagit County Jail because he was attending a trial related to the termination of his parental rights. Dkt 20, Counsel Declaration, Exhibit 1 at 20; *In re Welfare of A.M.M.A.*, 2016 WL 4275449, at *2-3, 195 Wn. App. 1041 (Wash. Ct. App. Aug. 15, 2016) (discussing trial dates). While plaintiff was housed in the Skagit County Jail, he signed an Affidavit for Applicant of Marriage on September 4, 2015. Dkt. 20, Counsel Declaration, Exhibit 2; Dkt. 21, Rule Declaration, Exhibit 10. This Affidavit

was submitted to Skagit County and the Skagit County Auditor's Office issued a Marriage Certification that was valid from September 11, 2015, until November 7, 2015. Dkt. 20, Counsel Declaration, Exhibit 3. Plaintiff's Marriage Certificate was signed on September 13, 2015, indicating that plaintiff was married at a religious ceremony that took place in King County. Dkt. 20, Counsel Declaration, Exhibit 3; Dkt. 4 at 9.

However, plaintiff's trial was completed and he was returned to DOC custody on September 8, 2015. Dkt. 20, Counsel Declaration, Exhibit 1 at 20. On September 13, 2015, plaintiff was housed in the Intensive Management Unit ("IMU") at the Washington Corrections Center ("WCC") in Mason County, Washington. Dkt. 20, Counsel Declaration, Exhibit 1 at 19.

In September 2015, White reapplied for visitation with plaintiff, which was denied because it had not been six months since the expiration of White's sentence related to a misdemeanor conviction in August 2015. Dkt. 21, Rule Declaration, Exhibits 1 & 4. On October 8, 2015, Plaintiff was transferred to the Washington State Penitentiary ("WSP") in Walla Walla. Dkt. 20, Counsel Declaration, Exhibit 1 at 18. White again applied for visitation, which was denied because her criminal history was too recent. Dkt. 21, Rule Declaration, Exhibit 6. On October 23, 2015, Donald Holbrook, the WSP Superintendent, wrote White a letter indicating that she could reapply for visits after November 18, 2015. Dkt. 21, Rule Declaration, Exhibit 7. White reapplied on November 7, 2015, but was told that she needed to wait until November 18, 2015, as Holbrook's letter indicated. Dkt. 21, Rule Declaration Exhibit 8.

White reapplied for visitation after November 18, 2015, but she was again denied because Department of Corrections ("DOC") staff discovered that she was still on supervision and because there were questions surrounding the validity of plaintiff and White's marriage. Dkt. 21, Rule Declaration, Exhibit 9. On February 3, 2016, the DOC received an appeal of the denial

of visitation from White. Dkt. 21, Rule Declaration, Exhibit 10. On February 12, 2016, the DOC denied White's appeal because six months had not passed since the closure of her misdemeanor conviction. Dkt. 21, Rule Declaration, Exhibit 11.

Plaintiff returned to MCC on February 1, 2016. Dkt. 20, Counsel Declaration, Exhibit 1 at 12. In February 2016, defendant Bechler, a classification counselor, was told by another counselor that plaintiff was claiming that he had gotten married to White. Dkt. 22, Declaration of Bryan Bechler, at ¶ 5. Defendant was concerned that the marriage was fraudulent because there was no paperwork indicating that the DOC had approved the marriage. *Id.* Department Policy 590.200 governs the requirements and process by which an inmate's marriage is approved. Inmates and their intended spouses are required to submit forms to the inmate's counselor. Dkt. 22, Bechler Declaration, Exhibit 1 at Directive II. The DOC then verifies the information and the prison superintendent must approve the marriage. *Id.* Inmates housed in IMU are not allowed to initiate a marriage application and the application process may be suspended when the inmate is in IMU. Dkt. 22, Bechler Declaration, Exhibit 1, at Directive I.B & C. According to defendant, the fact that plaintiff's marriage certificate was signed while plaintiff was housed in IMU and there was no record of DOC approval of the marriage, raised concerns about the validity of plaintiff's marriage. Dkt. 22, Bechler Declaration, at ¶ 5.

Defendant conducted an investigation into the validity of the marriage. Dkt. 22, Bechler Declaration, at ¶ 6. Defendant had previously conducted other such investigations and has contacted the Department of Health ("DOH") when there was evidence of a potentially fraudulent marriage. Dkt. 22, Bechler Declaration, at ¶ 4. During the investigation, defendant reviewed the affidavit submitted to obtain the marriage certificate, the marriage certificate, contacted WCC where plaintiff was housed on September 13, 2015, and reviewed other DOC

records. Dkt. 22, Bechler Declaration, at ¶¶ 6-7. Defendant concluded that the marriage was likely fraudulent because plaintiff was housed in the IMU in Mason County on September 13, 2015, and the marriage certificate indicated that the ceremony had taken place in King County.

On February 26, 2016, defendant wrote a letter to the DOH. Dkt. 22, Bechler Declaration at ¶ 8 and Exhibit 2. According to defendant, the information contained in the letter was true to the best of defendant's knowledge at the time. Dkt. 22, Bechler Declaration, at ¶ 9. Based on defendant's letter, on May 19, 2016, the DOH concluded that plaintiff and White's marriage was invalid. Dkt. 4 at 16.

On June 4, 2016, plaintiff appealed the decision. Dkt. 4 at 18-19. In response to the appeal, DOH reinstated the marriage on July 8, 2016. Dkt. 4 at 21. The DOC then approved White's visitation request. Dkt. 4 at 25. According to a letter submitted by an attorney who represented plaintiff in the child dependency and termination action in Skagit County, plaintiff's signature on the marriage certificate was signed on September 2, 2015, while he was at the Skagit County Jail. Dkt. 21. Exhibit 1 at 23. However, plaintiff's signature was not notarized until several days later, on September 13, 2015, by the officiant who performed the ceremony. *Id.*

Plaintiff alleges that defendant violated his rights under the Fourteenth Amendment. Dkt. 4. Although the exact nature of plaintiff's claims is not clear, it appears plaintiff alleges defendant violated his equal protection rights by discriminating against plaintiff. Dkt. 4 at 4. Plaintiff contends that he, his wife, and son have suffered mental and emotional distress. *Id.* Plaintiff seeks damages in the amount of $20,000. *Id.* at 5.

| | |
|---|---|
| 1 | **STANDARD OF REVIEW** |
| 2 | Summary judgment is appropriate if "the pleadings, the discovery and disclosure |
| 3 | materials on file, and any affidavits, show that there is no genuine dispute as to any material fact |
| 4 | and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a |
| 5 | genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to |
| 6 | find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* |
| 7 | *also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. |
| 8 | 1987). When presented with a motion for summary judgment, the court shall review the |
| 9 | pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. |
| 10 | at 255 (*citing Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 158-59 (1970)). Conclusory, |
| 11 | nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing |
| 12 | facts." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). However, "a pro se |
| 13 | complaint will be liberally construed . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. |
| 14 | 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted). |
| 15 | In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the |
| 16 | conduct complained of was committed by a person acting under color of state law and that (2) |
| 17 | the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or |
| 18 | laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other* |
| 19 | *grounds, Daniels v. Williams*, 474 U.S. 327 (1986). |
| 20 | **DISCUSSION** |
| 21 | Plaintiff asserts that defendant discriminated against him when defendant sent a letter to |
| 22 | the DOH regarding the validity of plaintiff's marriage. Dkt. 4. Defendant argues that plaintiff has |
| 23 | |
| 24 | |

not shown that he was treated differently than other similarly-situated individuals on account of a protected ground. Dkt. 19.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003); *Johnson v. California*, 207 F.3d 650, 655 (9th Cir. 2000) (per curiam). Prisoners are also protected by the Equal Protection Clause from intentional discrimination on the basis of their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Cruz*, 405 U.S. at 321-22), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). To establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Serrano*, 345 F.3d at 1082; *Freeman*, 125 F.3d at 737.

Here, defendant has submitted evidence that based on the information before him, including the lack of DOC approval of the marriage, the dates of the signed marriage certificate and plaintiff's DOC housing records, defendant believed that plaintiff's marriage was invalid. Dkt. 22, Declaration of Belcher at ¶ 9. Defendant states that he did not have any personal malice toward plaintiff or White in making his decision. *Id.* Defendant also declares that he has previously sent similar letters to the DOH where there was a question of the validity of an inmate's marriage. *Id.* at ¶ 4. Thus, the evidence shows that defendant's investigation and letter to the DOH was based on legitimate concerns about the validity of plaintiff's marriage.

Aside from plaintiff's conclusory allegation that he was discriminated against, his complaint lacks any facts in support of his contention. Plaintiff does not allege that he is the member of a protected class, nor does he allege any facts that would support an inference that he

was treated differently than a similarly-situated individual. It appears that the basis for plaintiff's claim is that defendant determined his marriage was invalid, and therefore, defendant's actions must have been taken with a discriminatory intent. However, facts lead to conclusions; conclusions do not lead to facts. Plaintiff's conclusory allegations that he was discriminated against, without any facts to support this claim, are insufficient to survive defendant's motion for summary judgment. In addition, plaintiff has failed to allege facts showing that defendant's actions were so arbitrary or irrational to give rise to a class of one equal protection claim. *See Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 992-93 (9th Cir. 2007) (discussing standard applicable to class-of-one claims).

This case presents nothing more than a misinterpretation regarding the date of plaintiff's signature on his marriage certificate and the date the marriage certificate was notarized. Based on the foregoing, plaintiff has not presented evidence demonstrating that defendant discriminated against him and violated his equal protection rights. Accordingly, defendant's motion for summary judgment should be granted.

As the Court has concluded that plaintiff has failed to raise material issues of fact relating to his constitutional claim, it is not necessary to address the question of qualified immunity as to that claim. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). It is also unnecessary to address defendant's argument that plaintiff's claim is barred by the *Noerr-Pennington* doctrine. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (*Noerr-Pennington* doctrine derives from the First Amendment's guarantee of the right of individuals to petition for redress of grievances.).

# CONCLUSION

Therefore, for the stated reasons, defendant's motion for summary judgment (Dkt. 19) should be granted and plaintiff's claims should be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **June 2, 2017**, as noted in the caption.

Dated this 10th day of May, 2017.

J. Richard Creatura
United States Magistrate Judge